IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNARD EVANS, **Plaintiff,** | : : : |
| v. | : : CIVIL ACTION NO. 25-CV-1623 |
| DEPARTMENT OF MILITARY AND VETERANS AFFAIRS, *et al.*, **Defendants.** | : : : : |

MEMORANDUM

**PEREZ, J.**                                                       JULY 21, 2025

*Pro Se* Plaintiff Bernard Evans commenced this civil action by filing a Complaint against Defendants Office of Personnel Management ("OPM"), the Board of Pensions and Retirement ("the Board"), the law firm Freedman & Lorry, P.C., and its attorney, Paul Himmel.[1] (ECF No. 2.) He also filed a motion to proceed *in forma pauperis*. (ECF No. 1.) For the following reasons, the Court will grant Evans leave to proceed *in forma pauperis* and dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim. The Court will permit Evans to file an amended complaint if he can cure the deficiencies noted by the Court.

**I.   FACTUAL ALLEGATIONS**[2]

Evans was working for the City of Philadelphia Streets Department when, on October 14, 2004, he was severely injured from an incident involving a drunk driver. (Compl. at 4.) He

---

[1] At Evans's request, the Court dismissed Defendants Department of Military and Veterans Affairs, Commonwealth of Pennsylvania, Fort-Indiantown Gap, and U.S. National Guard from this action on May 15, 2025. (*See* ECF Nos. 4, 5.) Evans identifies attorney Paul Himmel as a Defendant on page 4 of the Complaint.

[2] The factual allegations set forth in this Memorandum are taken from the Complaint and Exhibits (ECF Nos. 2 and 2-1). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

sustained back, neck, and shoulder injuries causing "lower back pain, lumbar disc[,] lumbar spine, [and a] bulged disk" that put him out of work for life. (*Id*. at 4-5.) As a result, he also had to leave his United States Postal Service job. (*Id*. at 4.) Lawyer Paul Himmel at the law firm Freedman Lorry represented Evans while his post-incident benefits were determined. (*Id*.)

Evans obtained a Compromise and Release settlement of $120,000 from Worker's Compensation in 2006. (*See* Letter from Board of Pensions and Retirement dated February 22, 2008 (ECF No. 2-1 at 13).) Evans applied for service-connected disability benefits from the Board, and it notified him that he qualified to receive $1755.65 per month. (*Id*.) However, service-connected disability benefits must be offset dollar-for-dollar by any award received under Worker's Compensation. (*Id*.) In order to offset the $120,000 amount paid to Evans from Worker's Compensation, the Board calculated that it would need to recoup a remaining amount of $53,343.82 going forward from February 2008 until October 2022, at the rate of $300 per month. (*Id*. at 13-14.) The Board already withheld all $66,656.18 in service-connected disability benefits owed to Evans from his retirement date (December 2, 2004) to that point in February 2008. (*Id*. at 13.) Thus, according to the letter, the Board planned to issue monthly benefits in the amount of $1455.65 until October 2022, increase it slightly to $1511.83 in November 2022, and then restore benefits to the $1755.65 figure in December 2022. (*Id*. at 14.)

On October 26, 2022, apparently at the very time when Evans's benefits were set to increase, the Board notified Evans that it had reviewed his file and discovered an error requiring further offsets. (*Id*. at 15.) The Board stated that, in addition to providing the $120,000 Compromise and Release Agreement, Worker's Compensation also paid Evans biweekly payments of $1380 between December 3, 2004, and September 2, 2006. (*Id*.) But the letter also disclosed that Evans had incurred $23,831.71 in medical expenses that should *not* have been

offset against the service-connected disability benefits. (*Id*.) Taking the medical expense amount and 2004-2006 payments into account, the Board figured that Evans owed $13,280.76 more to offset Worker's Compensation payments. (*Id*. at 17.) Accordingly, the Board informed Evans that, instead of increasing his benefits as planned, the Board would continue to issue service-connected disability payments for $1455.65 until June 2026. (*Id*. at 17.) The Board informed Evans that his full payment of $1755.65 will be payable in August 2026. (*Id*.)

With respect to any benefits related to his U.S. Postal Service job that he left in October 2004 due to his injury, Evans claims that "no one counted [his] military time from the U.S. Army National Guard." (Compl. at 4.) He contends that OPM only counted ten years of federal service but that he had an additional ten years of eligible service through his time in the Pennsylvania Army National Guard. (*Id*. at 5.) Evans alleges that "[t]he lawyer Paul Himmel did me wrong then ignore[d] everything that's happen[ed] to me for 20 years and more." (*Id*. at 4.)

Evans filed this civil action in March 2025, alleging that OPM, the Board, his attorney, and the law firm caused the loss of his rightful compensation, which in turn caused him to lose his home. (*Id*. at 5.) In addition to his own health problems, his wife suffers from poor health. (*Id*.) He asks the Court to order OPM to recalculate and pay the benefits it owes to him, and to require the Board to stop its recent efforts to collect additional offsets to his Worker's Compensation. (*Id*.) He also seeks $220,000 in damages from the Board and Freedman & Lorry. (*Id*.)

## II.    STANDARD OF REVIEW

The Court will grant Evans leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. When allowing a plaintiff to

proceed *in forma pauperis*, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

Moreover, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court accepts the facts alleged in the *pro se* complaint as true, draws all reasonable inferences in the plaintiff's favor, and considers whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). Because

Evans is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

#### A. Claims Against OPM

Evans claims that OPM miscalculated the amount he was entitled to receive after he retired from the U.S. Postal Service in 2004. According to Evans, after he left his U.S. Postal Service job in October 2004, "no one counted [his] military time from the U.S. Army National Guard [when calculating his retirement payment amounts]." (Compl. at 4.) He essentially seeks injunctive relief to order OPM to correct its calculation and pay the benefits allegedly due.

Evans's Complaint does not provide any factual information concerning benefits managed by or received from OPM; rather, he appears to be relying on the letters he attached to his Complaint to provide that background. He also leaves unsaid what steps he has taken to alert OPM to the alleged miscalculation. The Court concludes that it lacks jurisdiction over his claim that OPM miscalculated his benefits, in any event. As a former employee of the U.S. Postal Service, Evans would be covered by the provisions of the Civil Service Retirement System ("CSRS") or the Federal Employee Retirement System ("FERS"), depending upon when he entered federal service. *See Dungan v. Slater*, 252 F.3d 670, 672 (3d Cir. 2001) (explaining the FERS system replaced the CSRS for many employees hired after 1987). In either case, Evans must lodge his miscalculation challenge through the procedures provided by OPM. *See* 5 U.S.C. § 8347(b) (providing under the Civil Service Reform Act that OPM "shall adjudicate all claims" relating to civil service retirement including annuity benefits); 5 U.S.C. § 8461(c) (providing under the FERS Act that OPM "shall adjudicate all claims under the provisions of this chapter

5

administered by [OPM]"); *Hasan v. United States*, 171 Fed. Cl. 167, 171 (2024) (explaining that, when Congress passed the FERS statute, "it created an exclusive remedial scheme that displaced [the] court's jurisdiction over FERS-related claims."). Appellate review of OPM's decision may be sought from the Merit Systems Protection Board, which may in turn be subject to judicial review. *See* 5 C.F.R. §§ 841.305-306, 841.308; *see also* 5 U.S.C. § 7703. Because the Court lacks subject matter jurisdiction over Evans's claim for the recalculation of his benefits, the claim will be dismissed. *See Hasan*, 171 Fed. Cl. at 172 (concluding that the court lacked jurisdiction over former government employee's claim for back-pay compensation to his retirement account, and dismissing complaint).[3]

### B. Claims Against Board of Pensions and Retirement

Evans maintains that the Board has unlawfully taken or withheld service-connected disability benefits through the Worker's Compensation offsets. The Court understands Evans to assert a claim for deprivation of procedural due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "Section 1983 does not, by its own terms, create substantive rights; it provides

---

[3] To the extent that this claim may be construed under 42 U.S.C. § 1983 as alleging a violation of the Fourteenth Amendment for deprivation of property without due process, there is nothing to suggest that that claim could not be meaningfully addressed through the OPM rubric, which includes judicial review. *See Wigton v. Barry*, 949 F. Supp. 2d 616, 632 (W.D. Pa. 2013) (concluding that certain plaintiffs seeking recalculation of benefits and asserting constitutional claims were limited to exclusive remedy of CSRA mechanisms). *But see Minney v. United States Office of Personnel Management*, 130 F. Supp. 3d 225, 230 n.4 (D.D.C. 2015) (rejecting government's argument that court lacked jurisdiction over constitutional claim involving FERS benefits, noting that the Merit Services Protection Board is not the "sole or exclusive forum for constitutional challenges that are wholly collateral to the types of disputes" it is authorized to hear (relying on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994))). Considering the lack of facts Evans provides related to this claim, there is an insufficient basis to conclude that the claim is "wholly collateral." *Thunder Basin*, 510 U.S. at 212. In any event, because Evans has not pleaded a plausible constitutional claim at this juncture, the Court will dismiss it without prejudice under 28 U.S.C. § 1915(e)(B)(2).

only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Thus, a deprivation of property should "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). "[I]n order to state a claim for failure to provide sufficient procedural due process, a plaintiff must have taken advantage of the processes that are available to her, unless those processes are unavailable or patently inadequate." *Raven v. City of Philadelphia*, No. 15-4146, 2016 WL 320574, at *5 (E.D. Pa. Jan. 26, 2016) (quoting *Solomon v. Philadelphia Hous. Auth.*, 143 F. App'x 447, 453 (3d Cir. 2005)).

The Complaint does not contain sufficient facts detailing the processes available to Evans or his efforts to utilize those procedures. Evans attached an October 26, 2022 letter from the Board of Pensions and Retirement claiming that it had reviewed his file and discovered that it did

not account for Worker's Compensation biweekly payments of $1380 between December 3, 2004 and September 2, 2006. (ECF No. 2-1 at 15-17.) The letter does not outline any procedures that Evans could use to challenge that 2022 determination, nor does Evans explain elsewhere what efforts he in fact has taken to obtain relief. *See Raven*, 2016 WL 320574, at *5 ("The Complaint, however, does not allege that Raven took advantage of any process to address the nonpayment of her pension, that no process was available, or that the available process was patently inadequate."). Evans therefore fails to state a plausible Fourteenth Amendment claim against the Board.[4] The claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

### C. Claims against Freedman & Lorry and Attorney Himmel

Evans contends that Attorney Himmel from Freedman & Lorry "did [him] wrong [and] then ignore[ed] everything that's happened to [him] for 20 years or more." (Compl. at 4.) He seeks to recover money damages from the firm. (*Id*. at 5.)

#### 1. § 1983 claim

---

[4] On its face, Evans's allegation that the offsets going back to 2008 violated his Constitutional rights would appear to be barred at least in part by the statute of limitations. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011) (explaining that a statute of limitations generally begins to run when a cause of action accrues). The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). On the other hand, the October 2022 letter at least implicitly acknowledges that the Board offset approximately $23,800 of medical expenses before 2022 that should not have been subject to offset. *See* ECF No. 2-1 at 15, 17; *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) ("[T]he discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct") (citing *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005)). In light of the factual uncertainties alleged in the Complaint at this stage, the claim will not be dismissed on statute of limitations grounds. *Raven*, 2016 WL 320574, at *3 (explaining that "[w]e are uncomfortable concluding, at this early stage and based only on the facts as alleged in the Complaint, that the claims asserted in the Complaint are definitively barred by the statute of limitations.").

8

First, to the extent that Evans wants to assert a claim for damages under § 1983, the claim cannot proceed against Freedman & Lorry nor Attorney Himmel because neither the law firm nor the attorney are state actors. *Coulter v. Allegheny Cnty. Bar Ass'n*, 496 F.App'x 167, 169 (3d Cir. 2012) (*per curiam*) (concluding that none of the named defendants, including an attorney and his law firm, were state actors for the purposes of § 1983); *Graham v. Moon Lodge Chips Corp.*, No. 24-0124, 2024 WL 3275960, at *4 (E.D. Pa. Jul. 1, 2024) ("Courts have also consistently held that law firms and legal aid societies are not state actors for purposes of § 1983."). The Court will thus dismiss any § 1983 claims against Attorney Himmel and Freedman and Lorry.

### 2. State Law Claim

Evans's claim that the attorney and his law firm failed to protect Evans's rights also may be construed as a legal malpractice claim, which sounds in state contract and tort law. *See Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa. 2007) (holding that legal malpractice claims in Pennsylvania sound in both tort and contract law). Considering that the Complaint fails to state a plausible federal claim upon which relief may be granted, the Court will decline to exercise supplemental jurisdiction over this state law claim. *See* 28 U.S.C. § 1367(c); *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 398 (3d Cir. 1992) ("[I]t is well settled that, after disposal of a federal claim, a district court has discretion to hear, dismiss, or remand a supplemental claim for which there is no independent basis for federal subject matter jurisdiction."). The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a federal district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between

all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).

An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Residence alone is insufficient to establish domicile. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("The fact of residency must be coupled with a finding of intent to remain indefinitely."). Rather, "domicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Hovensa LLC*, 652 F.3d at 344. It is the plaintiff's burden to establish diversity of citizenship. *See Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

In the Complaint, Evans provides a Delaware address for himself and a Pennsylvania address for the Defendant law firm. (Compl. at 3.) He has not provided any information concerning the attorney's state of residence. He pleads at least $220,000 in damages, half of which he seeks to recover from the law firm. (*Id*. at 5.) For the purposes of this screening, it appears that diversity jurisdiction exists over Evans's claim against the law firm, but Evans has failed to adequately plead a basis for this Court to exercise jurisdiction over Attorney Himmel.

In any event, Evans has not pleaded a plausible malpractice claim against the law firm. "To state a legal malpractice claim under a negligence theory, the plaintiff bears the burden of proving: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to

exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff." *ASTech Int'l, LLC v. Husick*, 676 F.Supp. 2d 389, 400 (E.D. Pa. 2009) (citations and quotations omitted).  If the plaintiff is alleging malpractice under a breach of contract theory, he must prove "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Id*. (*citing CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  In Pennsylvania, malpractice plaintiffs must demonstrate "actual loss"—that is, "they must prove that the underlying legal representation would have achieved whatever the plaintiffs hoped to achieve." *Id*. at 402.

      The Complaint falls far short of pleading a plausible malpractice claim under tort or contract theories.  Evans offers no details beyond the assertions that OPM and the Board erred in their benefits calculations, and that his lawyer "did me wrong then ignored everything that's happen[ed] to me." (Compl. at 4.)  There is no indication of what duty or contract existed between Evans and the law firm, its terms, and what actions Evans alleges were in breach or constituted a failure by Freedman and Lorry to exercise ordinary care.  *See ASTech Int'l*, 676 F.Supp. 2d at 400.  Because Evans has not pleaded a plausible malpractice claim against the law firm, it cannot proceed.

      In sum, the state law claim asserted against Attorney Himmel will be dismissed for lack of subject matter jurisdiction. 28 U.S.C. § 1332(a).  The state law claim alleged against Freedman and Lorry will be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) because Evans has not stated a plausible claim under state law.  However, because it may be possible for Evans to allege additional facts to cure these defects, the Court will grant Evans leave to file an amended complaint.  Alternatively, may wish to assert these claims in an appropriate state court forum.

## III.    CONCLUSION

For the reasons stated, the Court will dismiss Evans's Complaint. The claims asserted pursuant to 42 U.S.C. § 1983 against Paul Himmel and Freedman & Lorry, P.C. will be dismissed with prejudice because they are not state actors. The rest of the Complaint will be dismissed without prejudice to amendment.

An appropriate Order follows.

**BY THE COURT:**

_____
**MIA R. PEREZ, J.**